# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | |
|---|---|
| LEADER INSURANCE COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 03-407-CV-W-FJG |
| | ) |
| MICHAEL LABELLA, et. al, | ) |
| | ) |
| Defendants. | ) |

## ORDER

On July 7, 2005, the Court held a bench trial on plaintiff's Complaint. After the

trial the parties submitted post-trial briefs on defendant's Bad Faith Refusal to Defend

Counterclaim (Docs. # 49, 50). The Court hereby rules as follows.

### I. BACKGROUND

On October 20, 2000, Michael LaBella and Mary Elliott were involved in a motor

vehicle accident. Oliver Elliott was a passenger in Mary Elliott's car at the time. As a

result of the accident Mary and Oliver Elliott filed suit against Michael LaBella for injuries

and damages. Mary Elliott settled with the insurance carrier for the owner of the vehicle

operated by Michael LaBella and her claim is not at issue. Oliver Elliott obtained a

judgment against Michael LaBella for $150,000 on September 24, 2002 to be collected

only from insurance coverage available to Michael LaBella.

Plaintiff Leader Insurance Company issued to Michael LaBella an automobile

liability insurance policy on a 1986 Astro van which was in effect at the time of the

accident. Oliver Elliott claims that Michael LaBella was covered by the policy with

regard to the $150,000 judgment. At the time of the accident, Michael LaBella was

operating a 1985 Dodge Diplomat, which was owned by his mother, Lenora LaBella.

The Dodge Diplomat was not listed as an insured vehicle on Michael LaBella's policy of

insurance. Michael LaBella was driving his mother's car on the date of the accident,

because his van was not operational.

In a letter dated February 23, 2001, Leader Insurance denied Michael LaBella's

claim based on Exclusion No. 13 which states in part:

> Coverage under this Part I, including our duty to defend, does not apply to:
> . . .bodily injury or property damage arising out of the ownership,
> maintenance or use of any vehicle, other than a covered vehicle, which is
> owned or furnished or available for the regular use of you or a driver listed
> on the Declarations page.

It should be noted that both Mr. LaBella and his mother are listed on the

Declarations page of his policy. The insurance policy at issue also defines "covered

vehicle" in part as:

> a substitute vehicle when any vehicle described on the Declarations page,
> or any replacement or addition, cannot be used because it is being
> serviced or repaired, or it has been stolen or destroyed. Collision or
> Comprehensive Coverage is not afforded to substitute vehicles. A vehicle
> owned by you does not qualify as a substitute vehicle.

## II. DISCUSSION

During the bench trial, Mr. LaBella testified that prior to the time of the accident

he had not made any repairs to the van, but on the day of the accident he purchased a

stabilizer bar and four used tires. Mr. LaBella testified that he purchased these items

from a salvage yard, but he did not have any receipts for the tires or the stabilizer bar,

because he paid cash for them. Mr. LaBella testified that he did not use the Dodge

Diplomat for his own purposes, but only used it to run errands for his mother. Counsel

2

for Leader Insurance company cross-examined Mr. LaBella and noted that in his deposition, he testified that he had driven the Dodge Diplomat approximately fourteen times before the accident. In his deposition, Mr. LaBella also testified that he could not remember whether he had driven the Dodge Diplomat to his friend's house. Mr. LaBella also admitted that he had some illegal drugs on his person on the date of the accident.

After reviewing the parties' briefs and listening to the evidence, the Court finds that Mr. LaBella was not just using the Dodge Diplomat to run errands for his mother, but was also using the vehicle for his own personal errands. The Court also finds that there are inconsistencies in his testimony as to how much he was driving the Diplomat. Additionally, the Court finds that there is nothing to indicate the Mr. LaBella was anxious to make repairs to return his Astro Van to operable condition. Therefore, because the Court finds that Mr. LaBella was not in the process or repairing or servicing the Dodge Diplomat, it does not qualify as a substitute vehicle. The Court also finds that the Dodge Diplomat was available for Mr. LaBella's regular use. Accordingly, the Court finds that Leader Insurance Company was correct in denying Mr. LaBella's claim under Exclusion No. 13, as there was no coverage for him when he was driving the Dodge Diplomat.

The parties submitted post-trial briefing on defendant's counterclaim for Bad Faith Refusal to Defend and Settle. Mr. LaBella argues that Leader intentionally and deliberately ignored the fact that he was operating the Dodge Diplomat at the time of the accident for the sole reason that his van was inoperable and was in the process of being repaired. He argues that Leader had no information to dispute the fact that the van was inoperable and that he had purchased parts to repair it. He states that Leader

3

performed no field investigation and chose not to hire an independent adjuster to inspect either the van or the Diplomat. He also argues that Leader never took a recorded statement to inquire about the van, the facts of the accident or the facts surrounding his mother's vehicle.

Leader argues that one of the elements of a bad faith claim is that the insured has demanded settlement within the policy limits. Leader argues that Mr. LaBella presented no evidence that he had ever made any demand on Leader to settle Mr. Elliott's claim within the policy limits. Leader additionally notes that they were prevented from investigating the claim because Mr. LaBella refused to cooperate and his attorney would not return Leader's telephone call. Leader states that in order to be covered, the Van had to be in the process of being "serviced or repaired" and Leader states that it had no facts indicating that this was being done. Leader states that they did not know that Mr. LaBella had purchased tires and a stabilizer bar on the day of the accident, until they took his deposition. Leader argues that the evidence does not show that they acted in bad faith, because there were legitimate questions regarding coverage for the Dodge Diplomat.

The Court agrees and find Mr. LaBella has not shown that Leader Insurance Company acted in bad faith when it denied him a defense in the underlying action and when it refused to settle the action within the policy limits of the Leader policy. There were disputed facts regarding coverage for the Dodge Diplomat and whether the Astro Van was in the process of being serviced or repaired. Leader has shown that Mr. LaBella was not cooperative when they did attempt to contact him. This does not show that Leader acted in bad faith. Accordingly, the Court hereby enters judgement in favor

4

of Leader Insurance Company on plaintiff Michael LaBella's counterclaim.

## III. CONCLUSION

For the reasons stated above, the Court hereby enters judgment in favor of plaintiff Leader Insurance Company on its Declaratory Judgment Complaint and finds that plaintiff's policy of insurance number 124-52497-2144-001does not afford coverage to Defendant Michael LaBella for the claim of Defendant Oliver Elliott in the case styled <u>Oliver L. Elliott v. Michael LaBella</u> the Circuit Court of Ray County at Richmond Missouri, Case No. CV 0301-70CC., or for any other claims arising out of the accident of October 20, 2000.

The Court also enters judgment in favor of Leader Insurance Company on defendant/counterclaim plaintiff Michael LaBella's counterclaim for Bad Faith Refusal to Defend and Settle.


Date: September 23, 2005                    **S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri                            Fernando J. Gaitan, Jr.
                                                          United States District Judge